[Civ. No. 7437. First Appellate District, Division Two.—May 19, 1931.]

W. F. DUNN et al., Appellants, v. STANDARD ACCIDENT INSURANCE COMPANY (a Corporation), Respondent.

A. Don Duncan for Appellants.

Robert E. Fitzgerald for Respondent.

PRESTON (H. L.), J., *pro tem.*—This is an appeal by plaintiffs from an order setting aside and vacating a default judgment.

On June 26, 1926, Nancy B. Clecak brought an action in the Superior Court of the City and County of San Francisco in the nature of a creditor's bill in equity against the plaintiffs and appellants in this action, in which she alleged

that John A. Clecak was indebted to her in a sum of money greatly in excess of that attempted to be reached in her suit; that W. F. Dunn and J. A. Williams, the plaintiffs and appellants in this action, were indebted to John A. Clecak for a commission earned by the latter in a real estate transaction consummated for them; that execution had been levied against the said Dunn and Williams, but that the latter had made return thereto asserting there was nothing in their hands belonging to and no debt owing to said John A. Clecak.

Nancy B. Clecak brought said action for the purpose of recovering the amount of such commission, and the same was brought under section 720 of the Code of Civil Procedure. Pursuant to that section the trial court, upon the application of plaintiff Nancy B. Clecak, made an order forbidding the "transfer or other disposition of such interest or debt" until the action could be prosecuted to judgment. As a condition of the order, the court fixed the bond in the sum of $1500 to indemnify the defendants in that suit (who are plaintiffs and appellants in this action) against such damages as they might sustain by reason of the injunction.

The case then went to trial, resulting in a judgment in favor of defendants, who are the plaintiffs and appellants in this action; from which judgment the plaintiff Nancy B. Clecak appealed and the judgment was affirmed by this court. (See 95 Cal. App. 537 [272 Pac. 1104].) In that action it was decided that there was no money in the hands of Dunn and Williams belonging to John A. Clecak subject to garnishment by Nancy B. Clecak.

The undertaking required of Nancy B. Clecak was furnished by the Standard Accident Insurance Company, the defendant and respondent herein. Thereafter, and on June 17, 1929, Dunn and Williams Company commenced this action against said Standard Accident Insurance Company alleging, among other things, that by reason of the issuance and maintaining of said restraining order and injunction, these plaintiffs sustained damages as follows: "(1) General damages in the sum of $700.00; (2) Special damages in the sum of $350, required to be paid by these plaintiffs as attorneys' fee to the attorneys representing the plaintiffs and appellants when they were defendants in the aforesaid suit for the express purpose of taking and prosecuting proceed-

ings to dissolve the said restraining order and the said injunction, which said sum these plaintiffs have actually paid to their attorneys prior to the commencement of this action . . . ; (3) Special damages for the interest on said sum of $1500 from the date these plaintiffs were restrained from paying out said sum to the date said restraining order and injunction were released; (4) Special damages in the sum of $34.50, being the amount taxed against Nancy B. Clecak as plaintiff in the former action; (5) Special damages in the sum of $98.10, being the amount taxed the appellant, Nancy B. Clecak, in favor of these respondents, in the former action.''

The complaint then alleged a written demand on Nancy B. Clecak to pay the aforesaid damages and her failure to do so.

To this complaint a demurrer was interposed by the defendant and respondent Standard Accident Insurance Company and overruled by the court with ten days given within which to answer. The notice of the overruling of the demurrer was acknowledged by defendant's counsel on August 14, 1929.

On August 20, 1929, counsel for defendant procured from counsel for plaintiffs a stipulation extending his time to answer the complaint to and including the fifth day of September, 1929. The answer was not filed and the time expired without any further stipulation being asked by the defendant's counsel, and without any order of the court being obtained. On September 19, 1929, plaintiffs' counsel notified counsel for defendant in writing that the time specified in the stipulation had expired. Thereafter, on September 20 or 21, 1929, counsel for plaintiffs saw counsel for defendant personally and demanded that he, counsel for defendant, file his answer in said action immediately, and counsel for defendant promised to file the answer the following week. The answer was not forthcoming as counsel for defendant had promised, and counsel for plaintiffs again notified counsel for defendant on September 28, 1929, in writing, that no answer had been filed and strongly urged him to get his answer filed. No reply was received to this letter of any kind. Counsel for plaintiffs again, on October 15, 1929, wrote counsel for defendant, saying in part: ''Although you promised me to have in your answer in the above entitled

matter several weeks ago, I have heard nothing further from you. In the meantime, I wrote you on September 28, 1929, that the answer would have to be in the latter part of that week. I received no reply from you, nor the answer. Although I dislike very much to take a default under the circumstances, I do not feel that it is fair to me to have to keep after you continuously to get in your answer, and this is, therefore, to advise you that if your answer is not in by the end of this week, I will enter a default on Monday, October 21, 1929. Your answer is now almost two months overdue.''

Thereafter, on October 22, 1929, default was entered. On October 26, 1929, plaintiffs' counsel was served with the answer. Thereafter, on December 18, 1929, before entering the judgment on the default, plaintiffs' counsel again wrote counsel for defendant as follows: ''In the above entitled matter your time to file your answer expired on September 5, 1929. Inasmuch as you failed to ask for any extension, I wrote you on September 19, 1929, to please get in your answer. The answer was not received and on September 28, 1929, I wrote you again, insisting that you get in your answer by not later than the end of the following week. You had assured me that you would have your answer in by the preceding week. On October 15, 1929, I wrote you again pointing out that you had failed to get your answer in as you had promised me some weeks previously, and inasmuch as you had never answered my letters nor asked any extension of time nor any order of court extending your time, I then wrote you that the burden should not be upon me to pursue you for this answer and if it was not filed, I would enter a default on Monday, October 21, 1929. Your answer was then almost two months overdue. Accordingly I entered a default on October 22, 1929, and on October 26, 1929, I received your answer. I have discussed the matter with my associates here . . . and they have all taken the position that you had more than ample warning of the default and moreover, that it was an imposition upon the attorneys for the plaintiffs for you to put the burden upon them of endeavoring to get an answer from you. I have let some time elapse as I hesitated to proceed to take a default judgment, but this is to advise you that we consider it quite justifiable, under the circumstances, to have judgment entered

upon the default, unless you take steps immediately to set aside the default, which action, if taken, will be vigorously opposed. . . . ''

Having no word whatever from counsel for defendant, the plaintiffs entered judgment on the default on December 28, 1929. The hearing was had before the Honorable Frank H. Dunne, Judge of the superior court, at which time counsel for plaintiffs placed the entire situation before the court, and proof was offered on the merits, and the court, after hearing the matter, ordered judgment for the special damages set forth in the complaint only, said judgment being for the aggregate of these two items totaling $820.36, together with costs. The judgment was entered January 2, 1930. On January 6, 1930, counsel for plaintiffs addressed another letter to counsel for defendants, which was this time personally delivered. No word whatever was received in reply to this letter and an execution was accordingly issued and levied on January 10, 1930. It was not until then that plaintiffs were able to get any action whatever from the defendant.

Thereafter, and on January 20, 1930, the defendant served and filed its notice of motion to set aside the default and vacate and set aside the judgment and to recall and quash the execution levied thereon.

The motion was made under section 473 of the Code of Civil Procedure and upon the grounds that the default and judgment were taken against the defendant through its mistake, inadvertence and excusable neglect. The motion was supported by the affidavit of Mr. R. E. Fitzgerald. Counteraffidavits were made and filed by A. Don Duncan, attorney for plaintiffs, and by his secretary. The matter was argued before the Honorable Walter Perry Johnson, and further affidavits offered by Mr. Fitzgerald and Mr. Duncan. The matter was thereafter submitted and on February 3, 1930, the court made its order granting the motion to set aside and vacate the order entering the default and judgment upon the payment to plaintiffs by defendant of the sum of $20 within five days. A check for $20 was tendered, but was not honored by the bank and accordingly plaintiffs made their motion for an order denying the motion to vacate and set aside the judgment on the ground that' the conditions of the same had not been complied with. The court thereupon extended the time for the payment of the money and denied

the motion to vacate its order, Whereupon, plaintiffs perfected and prosecutes this appeal.

 The granting or denying of a motion of this character is very largely a matter of discretion to be liberally exercised by the trial court in furtherance of justice, and where the action of the trial court will result in a trial upon the merits the appellate courts are very reluctant to interfere with the exercise of such discretion and will only do so when it clearly appears that there has been a plain abuse of discretion. (*Nicoll* v. *Weldon,* 130 Cal. 666 [63 Pac. 63]; *Staley* v. *O'Day,* 22 Cal. App. 149 [133 Pac. 620]; *Jones* v. *Southern Pac. Co.,* 71 Cal. App. 773 [236 Pac. 336]; *Carbondale Machine Co.* v. *Eyraud,* 94 Cal. App. 356 [271 Pac. 349]; *O'Brien* v. *Leach,* 139 Cal. 220 [96 Am. St. Rep. 105, 72 Pac. 1004]; *Redding Gold & Copper Min. Co.* v. *National Surety Co.,* 18 Cal. App. 448 [123 Pac. 544]; *Brooks* v. *Nelson,* 95 Cal. App. 144 [272 Pac. 610], and cases there cited.)

Nevertheless, cases do occur when the appellate court is obliged to say that the action of the trial court involves a plain abuse of discretion and in such a case it is the duty of the appellate court to reverse the action of the trial court. (*Shearman* v. *Jorgensen,* 106 Cal. 483 [39 Pac. 863]; *Bailey* v. *Taaffe,* 29 Cal. 423; *Redding Gold & Copper Min. Co.* v. *National Surety Co., supra; Gordon* v. *Harbolt et al.,* (Cal. App.) 280 Pac. 701.)

 In this case a default and judgment were duly and regularly entered against the defendant Standard Accident Insurance Company, a corporation, for $820.36 and costs. Such default and judgment cannot be set aside and vacated except upon a clear showing that they were taken against defendant through its mistake, inadvertence, surprise or excusable neglect. Did defendant make such a showing? We think not.

Defendant contends that the order setting aside the judgment was made on conflicting evidence and therefore the order is unassailable in this court. We have searched the record carefully and can find no substantial conflict in the affidavits upon which the trial court vacated the default and set aside the judgment.

Defendant's counsel apparently relies solely upon "excusable neglect". The material part of his affidavit reads:

"In the month of September, 1929, on several occasions affiant explained to A. Don Duncan, one of the counsel for plaintiff therein that affiant was badly pressed for time and would appreciate being granted extension of time for the purpose of putting in his answer; that on each said occasions affiant was informed by said A. Don Duncan that the latter was being pressed by his clients but that he did not make a practice of taking defaults and affiant was requested to get the answer in as soon as possible; that during all of the month of September and October affiant was very busily engaged both in the trial and preparation for trial of numerous cases and believing that no default would be entered without preliminary notice from said counsel for plaintiff *affiant neglected to file* said answer until the 24th day of October, 1929."

We are unable to find a word in any of the affidavits of defendant's counsel which says or intimates that plaintiffs' counsel *agreed not to take a default.* On the contrary that affiant admits at least that he was told to get the answer in as soon as possible. In the counter-affidavit of plaintiffs' counsel, affiant admits that there was a conversation on September 20th or 21st, in the elevator in the Russ Building, and that affiant reminded counsel for defendant that he had written him a letter regarding his answer and that counsel replied, "Yes, I have been trying a case in Oakland, but will get the answer in next week." This promise on the part of defendant's counsel *is not denied by him.* The affidavit also states that plaintiffs' counsel told defendant's counsel "that it would be necessary for him to get in his answer". This also is not denied. Defendant's counsel filed a second affidavit in which he states "that he talked to plaintiffs' counsel through the months of August, September and October, and that he had told plaintiffs' counsel he had and would continue *to be necessarily delayed* in the preparation and filing of said answer".

There may be some conflict in the affidavits of the parties as to dates, but the various letters sent to defendant's counsel shows conclusively that plaintiffs' counsel was making repeated and strenuous efforts to get defendant's counsel to file an answer, to which letters counsel did not even reply.

Counsel for defendant admits receiving the letter of September 28, 1929, in which letter he was positively notified'

that he had failed to keep his promise to get his answer filed in the preceding week, and that the burden should not be on plaintiffs' counsel to pursue him for his answer, and that plaintiffs' counsel "must insist that you have it in by not later than the end of next week". This letter alone removes all necessity of considering the alleged conflict in the previous oral conversations. Counsel for defendant made no reply to this letter of warning. Thereafter, plaintiffs' counsel wrote another letter to defendant's counsel, which we have already quoted. This letter remained unanswered and no answer was forthcoming and defendant's default was entered on October 22, 1929.

Certainly, in view of these admitted facts, it cannot be held that defendant presented to the trial court a reasonable excuse, based upon one of the statutory grounds of mistake, inadvertence, surprise or excusable neglect, for failing to file its answer before default was entered.

We are constrained to hold that the learned trial court abused its discretion in granting the motion.

The order is reversed.

Nourse, P. J., and Sturtevant, J., concurred.